Thank you. Excuse me. Thank you, Your Honors, and I would like to reserve five minutes for rebuttal. May it please the Court. My name is Christina Jump and I'm here on behalf of Appellant Haisam Elsharkawi for the second time. Procedurally, this case began on Halloween of 2018 with the filing of his dressed in religious attire, began a religious pilgrimage, or Umrah, with an international flight out of LAX airport. He never made that flight. Instead, he was searched, detained, handcuffed, and brought against his will into a cell in the basement of LAX, begging along the way for those who noticed to call an attorney. I'm a U.S. citizen. I've done nothing wrong. He spent the next four hours handcuffed to a bench in that basement. He committed no crime. He carried no contraband. At the district court level, after filing his initial complaint, he accepted the offer of judgment from the government on his FTCA claims. The district court later dismissed his remaining claims and we appealed to this court. This court reversed and remanded in October of 2020. In addition to reversing the dismissal, this court also reversed the district court's finding that he had sufficiently shown an imminent risk of future injury. Without further explanation, the court cited Lujan and remanded with orders to allow for amendment. He filed his amended complaint in February of 2021 when the COVID pandemic was in full swing. As a result, he could not plead specific dates of travel for the future. He could not list specific identified concrete times that he would go to Egypt or to Saudi Arabia, but he identified his past visits to see his family, pleading that he had gone in 2009, 2013, 2016 and wanted to go see family in Egypt again as soon as he was able and that he still wanted to complete his religious pilgrimage, which he had not completed, which he had begun in the in the events that led to the filing of this complaint. He also identified the Department of State restrictions, advising the United States citizens not to travel to Egypt and to Saudi Arabia at that time, and he did not want to take the health risk of attempting to do so. Recognizing that it was bound by this court's prior order, the district court sympathized with Mr. Elsharqawi's situation and inability to plead specific dates for travel, but dismissed, citing that this court's order identified only that it was reversing on that point and finding that he had not specifically sufficiently identified an imminent risk of future injury. Well, was it that the district court felt bound by the Ninth Circuit decision or that the amended complaint was insufficiently different from the earlier complaint? It wasn't, that was the impression that I had, so that at a later time when the facts were different, it would not be prevented from giving him standing. Your Honor, the holding of the district court is short and states that it's bound by the holding of this court and that the amended complaint listed less specificity as to future dates and travel than had the original complaint, and therefore, under the holding of this court, that the district court was bound and issued its order of dismissal without leave to amend, finding that further amendment would be futile. Okay, but my point is, am I right that there was nothing in either the Ninth Circuit decision or the district court decision that said today or next week or whatever the facts and circumstances were at that time? It's not that we have to change the law of that previous decision. I agree with you that a ruling that he could establish standing at a future time would not require changing the law or contradicting that previous decision. And this court's order in its earlier opinion did not articulate anything beyond simply a reference to Lujan as they see generally. Could he file a new complaint? Is there anything standing in his way? In other words, when he feels free to travel again and makes travel plans, could he file a new complaint because he's requesting injunctive relief? Or is there a reason he couldn't do that? Your Honor, some of his claims would remain ripe that he could file a new complaint, but we're talking about things that took place in 2017. But he's not asking for damages at this point. He's asking for injunctive relief with a challenge to the Border Patrol's guidelines, am I understanding that? He is asking for a change to the guidelines, but he is also seeking damages. He originally sought damages and that's part of what was dismissed, but what we had appealed the first time. But this order right now from which we appeal is based simply on the standing issue. And so could, I guess my question is, is there anything stopping him because of statute of limitations or any concerns like that that would stop him from filing a new complaint once he has concrete travel plans? Your Honor, I believe that some of, first of all, I don't think that that would necessarily be the most judicially efficient use of the court's resources, but he has some of his claims have a four year statute of limitations, I believe, which would be expired by now from his original complaint. For injunctive relief? Not the injunctive relief part. OK, but all he has pending now is injunctive relief. That's my understanding. So is that not correct? This is what we're looking at now, the complaint currently before us is requesting injunctive relief. It's requesting injunctive relief and I will confirm and get back to you during my rebuttal time, but I believe that he does still have, he did originally and I believe that he does still have a claim for damages as well. And since the law has changed since his filing of his complaint, he'd like to seek nominal damages for the past harm, which was not available at the time that he originally filed his complaint. Or is your argument that the current complaint sufficiently states certainly impending travel? Your Honor, to answer that, I would point you to in paragraph 73 to 77 of the amended complaint, which identify his past travel to Egypt in 2009, 2013, 2016 to visit family. The fact that he wants to do that again as soon as able and that he identified that he wanted to, wants to complete his religious pilgrimage and intervening since the district court's decision, which took place in, which was issued in 2021, the DC circuit issued its holding in Jabril versus Mayorkas on some similar and applicable issues that travel every two years to visit family was sufficient in the past to show a demonstrated history that would indicate a likelihood of future harm and noted that the DC circuit noted the same religious beliefs and requirements to travel to Saudi Arabia for religious purposes for a pilgrimage as Mr. Elsharkabi was attempting to do and articulates in his complaint. There is also the Getty v. Mayorkas opinion from the fifth circuit, which came out subsequent to the district court's decision, which states that comparing Lujan to this case is apples to oranges as far as standing and the act of flying causes the injuries, not just the  This court also issued its holding in Fikrey v. FBI in May of 2022, recognizing that a voluntary cessation in the, in that case, in the no-fly context standard had not been met by the government by its assurances that it would, that it had not, that it was releasing the individual in that case, the plaintiff Fikrey, and that he could travel, but that that was completely untethered to any policy change or guarantee for the future. And we believe that that similar reasoning applies here as to Mr. Elsharkabi, that while he had traveled previously without issue, the most recent time that he traveled was the time in 2017, which is set forth in the complaint, in the man, in the original and amended complaint. It's the most recent travel that he has to go by. And as the district court, I'm sorry, as the DC circuit noted in Jibril it would be a heartless argument to say that he needs to undergo that same travel in order to find out if he would still have the same results. It's a reasonable, it's a reasonable belief on his part that since there's been nothing intervening to show that it would not happen, that if he were to show up at LAX again in religious garb, ready to travel on a religious pilgrimage to Saudi Arabia, that he would undergo the same treatment, likely. And so we believe that under the intervening authority that has come since the district court's opinion, and the specificity that was available to him, that he has sufficiently pled. In the alternative, we would ask that this court re-mand the case to allow him to re-plead as we're here today in person. Last time that this case came to this court, it was over Zoom or electronically for everybody. We're able to be here in person. He's able to travel now. He would be able to make the reservation. He can plead specificity now. So even if this court does not find the holdings of the intervening circuit court cases from the DC Circuit, Fifth Circuit, and Ninth Circuit to be persuasive along with his amended complaint, then we would ask that this court re-mand the case back to the district court. Because of the extreme change in circumstances, the impossibility and impracticability related to the COVID pandemic no longer exist. We only, I thought that your claim or what you desired was a holding that there was standing based even on the 2017 state of facts. If instead we re-mand to say, you know, find out the state of facts now, how is that any different from just letting him file a new action that brings in those facts? Is it this statute of limitations on damages that you're concerned about? But I didn't think damages was still alive. Maybe I'm wrong. Your Honor, we do believe that what he's pled based on the 2017 actions is sufficient, that's correct. The district court dismissed without leave to amend based on futility that was perceived at the time under the COVID restrictions. So as to simply what his future plans might be and establishing the imminent risk of future injury piece for standing, he can now plead what he could not plead then. But what's the difference between pleading it on re-mand from us and pleading it in a new action? There would be for some of his claims, again, a statute of limitations issue for some of his original complaint. I just want to be clear. I thought maybe I was wrong. Many, if not all of the other claims other than prospective relief were dismissed and not specifically appealed. Am I wrong about that? They had been dismissed. They weren't reached by the district court on this last round. The district court only got as far as standing based on the imminent risk of future injury. So this court had re-manded to allow re-pleading on more than just that one issue. And we re-pled on more than just that one issue. The district court the second time around only reached the standing based on imminent risk of future injury and did not get to the other issues. So there isn't a court ruling. Are the other claims still pending? We believe that there are, yes. We would argue, my opposing counsel may have a different point of view on that, but we'd say that they are, in fact, ones that have yet to be addressed under the amended complaints by the district court. So there hasn't been a ruling on them since we amended, since there's a lot. Is this an interlocutory appeal? No, it was completely dismissed because the court just stopped at there isn't standing for imminent risk of future injury and dismissed everything based on that. So again, we would argue that with the now opportunity that he could plead nominal damages, which he could not originally plead, and that he had pled, I believe it was a 1981 claim based on the cost of the ticket, that the district court did not reach those other issues in the re-pled complaint. So the damages, the harm that he suffered in 2017, he would have standing for that. I don't think there was any issue about standing. He certainly was detained. He certainly, his phone was taken, and all of those things happened. So there certainly was a particularized injury there. I didn't think those sorts of claims were at issue anymore. I mean, the question about standing has to be whether he will encounter similar harms in the future. So I'm not understanding your argument here. The reason on which and the scope of the district court's order that we're here before you on right now is simply we didn't go beyond the standing for showing future injury, did not look at the other issues, and did not reach any substance, any other items that were re-pled. And then again, did dismiss without leave to amend based on perceived futility. We believe that it would be in the interest of judicial economy to simply allow him to re-plead here instead of start over, and that there are some issues, again, with pleading nominal damages, which he could plead now, the whole package. We certainly, to the extent, if that's the only option, would file a new complaint for him and move forward. But we don't believe that that should be necessary based on the intervening court decisions. And we also believe that amendment here would be in the best interest of judicial economy. I see that I am out of time. So I'm going to sit down, and I'd be glad to answer any additional questions. And we'll check, confirm on the pleadings and the order to come back and discuss on rebuttal. Thank you, Your Honors. Thank you, counsel. Good morning. May it please the court. Garrett Coyle from the Justice Department for the government. The only remaining claims in this appeal seek an injunction against future warrantless searches of Mr. Elsharkawi's cell phone at the border. There are no claims remaining for damages or other claims alive in this case. In the prior appeal, this court held that Mr. Elsharkawi lacked standing to pursue such an injunction because he hadn't alleged concrete plans to travel across the border. On remand, the district court correctly determined that the amended complaint doesn't allege any new facts establishing concrete travel plans. With no concrete travel plans, there's no substantial likelihood that his phone will be searched at the border. And this court should affirm on standing grounds. Well, how concrete do they have to get, given that at the time COVID existed and travel was suspended? Three responses, Your Honor. First, there is no bright line rule about in this area. It is a totality of the circumstances inquiry into whether his phones are sufficiently likely to be searched in the future, such that this court would not be giving an advisory opinion on the constitutional questions. Second, I think as a general matter, at a minimum, he would need concrete travel plans with no evident barrier to those travel plans. And then third, I would point out that by themselves, concrete travel plans are not enough to show that his cell phone is substantially likely to be searched in the future. In the red brief on page 17, footnote 7, we explain that only one of his trips over the past 13 years is alleged to have involved the search of his phones. Just because his phone was searched once, five years ago, doesn't establish that it is substantially likely that it will be searched again in the future. But doesn't the Border Patrol have a policy as to such searches? Yes, Your Honor. The policy allows such searches, but it does not mandate that any traveler will be subject to a search. In other words, it authorizes it, but does not mandate it. When you talk about concrete plans, sort of going back to what kind of concreteness, if he says, I want to go on the Hajj in 2024, and I've submitted an application for permission to enter Saudi Arabia, and I have the funds to travel, would that be good enough? Your Honor, I... My mother's 80th birthday is December of 2023, and I've contacted a travel agent, something that's fairly concrete, isn't it? Or do you say that he's got to have a ticket in hand? I don't think there is a bright line rule that requires him to have purchased a ticket, have a ticket in hand. I think the hypothetical that Your Honor is positing gets him closer to establishing standing. It gets him out from under the court's prior decision. I think he would still be in the situation where he hasn't established that, even though we might have concrete travel plans, his phone is likely to be searched. I understand that's a separate issue. And if we were to rule in your favor now, would that in any way prevent him from bringing a new action based on the kind of plans or even more concrete that I posited? No, an affirmance on standing grounds, because the district court dismissed the case without prejudice, would not be preclusive if he subsequently came up with concrete travel plans to filing a new action. There would still remain the problem that I mentioned, that his phone may or may not be likely to be searched on any given trip going forward. Okay, but that issue, we really don't have, you know, much of a record and briefing on. I would also point out that there is no statute of limitations issue that I'm aware of for a claim for prospective injunctive relief that would be at issue, and there are no remaining claims for damages. So the only thing would be a claim for prospective injunctive relief, which would not be barred. Can you explain why there's no remaining claim for damages, how that came to be? Yes, Your Honor. There were three other sets of claims at issue in this case, other than the one for prospective injunctive relief that we're here talking about today. There were tort claims under the Federal Tort Claims Act. Those were resolved in the first round of district court proceedings by an offer of judgment that Mr. Elsharkawi accepted, and the district court entered judgment pursuant to that offer of judgment. So those were fully resolved in the first round of district court proceedings. There were also individual capacity Section 1981 claims brought the first time around. Those claims were dismissed by the district court, and the dismissal was affirmed by this court in the prior round of proceedings, and Mr. Elsharkawi did not seek further review of that decision, so those were fully resolved by this court's prior decision. And then there was also a claim for retrospective injunctive relief, a claim that any data retained from the 2017 search of his phones should be expunged. Those claims were not for damages, but were for injunctive relief. Those were resolved in the most recent round of district court proceedings. As directed by this court, the government filed supplemental declarations, ten of them in district court. After Mr. Elsharkawi saw those ten supplemental declarations, he voluntarily dismissed the claim for retrospective injunctive relief, leaving only the claim for prospective injunctive relief. The opposing counsel said there may be a claim for nominal damages. Is that incorrect in your view? They have never asserted a claim for nominal damages in this case. I don't know what legal basis there would be to seek nominal damages. There might be sovereign immunity issues, but it's not an issue. It's never been raised in this case. How would you distinguish the D.C. case of Jibril versus Mayorkas? On two grounds, Your Honor. First, there was a significantly more substantial history of prior travel at issue there, making it understandable that future travel would be imminent. And then I think that... So, is it the fact that the plaintiffs there were... So, the plaintiffs there, like the plaintiff here, was a U.S. citizen of Jordanian national origin. I mean, I don't know what national origin, but he is a U.S. citizen. And he lives here. And like Jibril, he routinely travels to... Where is he going? Saudi Arabia. And he has sincerely held religious beliefs that require traveling to Saudi Arabia to complete the Hajj and pilgrimage obligations. He's pled all of that here. I think the two differences are, first, the extent of the prior travel. In the Jibril case, it was 12 to 15 times. Here, it's three times and an attempted fourth trip in the past 13 years. The other more significant difference is that the pattern of having his interests harmed in the Jibril case was much more regular than in this case. In Jibril, the three most recent trips involved not only searches of his electronic devices, but also extensive questioning and other interference with his rights. In this case, Mr. Elsharkawi has had his phone searched once in the past 13 years, and it occurred five years ago. So I think the pattern of actual interference with his alleged rights is significantly different in the Jibril case. Okay, so suppose he had a ticket in hand. Would that change everything? Would that change the analysis you just put forth? I think the ticket in hand would likely establish concrete travel plans, assuming there's no other apparent barrier, like a visa was going to be denied. But I think the issue that I was discussing with Judge Boggs would remain on the table. He hasn't established that just because his phone was searched once five years ago doesn't establish that it's substantially likely to be searched in the future. Because I suppose that last argument, if we didn't at least consider it as an issue, would mean that anybody could raise a claim saying, well, I think I'm the kind of person that might have my phone searched. That's exactly right, Your Honor. And that would give them standing if they met the imminence. That's exactly right. In the alternative, even if there were standing, this court could also resolve on the merits. The Department of Homeland Security policies governing cell phone searches at the border are fully consistent with the Constitution as the district court correctly determined in the prior round of proceedings. Under this court's cases, the Fourth Amendment requires no warrant, probable cause, or reasonable suspicion to manually search a cell phone at the border. Forensic searches require only reasonable suspicion, not probable cause or a warrant. And the First Amendment imposes no higher standard for border searches. If there are no further questions, this court should affirm. All right. Thank you, counsel. Ms. Jemp, I'll give you a couple minutes to respond. Thank you, Your Honor. I would like to say that, again, Mr. Elshakawi, he did plead for injunctive and declaratory relief as well as attorney's fees in what was pled most recently, but could now bring more claims, including a claim for nominal damages for past harm, which was not available at the time but based on the same operating facts, which he would like to bring forward to speak to, as my opposing colleague mentioned on the Jibril matter in the D.C. Circuit. The D.C. Circuit also recognized that having previously traveled without issue does not mean there won't be a problem going forward. Having previously traveled without issue simply means there wasn't a problem at that time. But the most recent time of travel, there was an issue. And that's what the D.C. Circuit relied on. That is also true here, Mr. Elshakawi. The emphasis on it having been five years ago is misleading in that, while that is the date, he went through a substantial period of time of not being able to travel. He also has concerns of being subjected to the exact same thing again or a very similar thing again. His most recent travel is what is set forth in the complaint and what happened in 2017 and under the holding of the D.C. Circuit. That's what he would go on. There's been nothing more recent from the government to show that would not happen. So, that's the most recent indicator of what's likely to happen in the future. But what about the other part of his argument? I mean, even if we were to say, okay, this case is like Jibril, what about the – what showing have you made about the fact that he will be searched pursuant to the CPB policy? Your Honor, I would say, first of all, that the District Court, again, did not reach the amended complaint on those issues this last time around, so I would think that the District Court should have an opportunity to address those. But again, the most recent indicator he has is what happened the last time that he traveled. The issue that was voluntarily dropped was as to whether – only as to whether the government had retained any copies of any information from when it searched his phones, not whether the searches were improper going – at that time. And those issues continue to remain. He pled that there were pictures of his wife on his phone without her hijab, and he had issues for religious reasons of having those searched. We have argued, again, that there's – he had no indication that there was any contraband that would be on his phone. There was no reason to believe that there was any suspicion, any reasonable suspicion to look at his phones in any detail. And the government agents who did go through his phones went through his Amazon profile, and they went through his eBay purchases, and they went far into detail beyond simply checking to see if there was anything that was contraband on the phones. And the only – they had no indication of doing that. He has no criminal history. He has no past history of anything that would be a trigger. He was simply dressed in religious attire and about to travel to Saudi Arabia for a religious purpose. So we believe those claims are still alive. Again, and as to the Jibril holding on – even if we're not looking at the family travel to Egypt, but we believe that that's very comparable to the Jibril holding. Mr. al-Sarkawi pleads, again, three separate times every few years that he has gone to Egypt when he could to visit family. That is very comparable to the family in Jibril pleading that they had gone every two years to visit family members overseas. And the D.C. Circuit recognized in Jibril that the religious need to travel to Saudi Arabia for pilgrimage carries weight, and that is exactly what Mr. al-Sarkawi was attempting to do here, pleads that he wants to do in the future, and has yet to be able to conclude. With that, I would again ask that either this court find that he has sufficiently pled, particularly in light of the intervening authorities, which neither the district court nor this court has had the opportunity to opine on. We agree that finding in his favor at this time does not require contravening this court's previous decision, just articulating it further. And we would ask that in the alternative, this court remand to allow him to re-plead in the interest of judicial economy, and so that he can add that specificity now that it's possible. All right. Thank you very much, Counsel. Al-Sarkawi v. United States will be submitted.
judges: Boggs, WARDLAW, IKUTA